IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:25-cv-20

KRISTINE MATTHIES,

        Plaintiff,

v.

NOVANT HEALTH MATTHEWS MEDICAL CENTER, LLC,

        Defendant.

**COMPLAINT**

Plaintiff Kristine Matthies ("Plaintiff" or "Matthies"), hereby submits this Complaint and alleges against Defendant Novant Health Matthews Medical Center, LLC ("Defendant" or "Novant") the following:

**INTRODUCTION**

1. Plaintiff brings this action against Defendant for religious discrimination for failure to accommodate Plaintiff's sincerely held religious beliefs, unlawful suspension, and wrongful termination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. 2000e, *et. seq*. Plaintiff also asserts common law claims of wrongful discharge in violation of North Carolina public policy.

2. Plaintiff has a sincerely held religious belief that prevents her from receiving the flu vaccine. Plaintiff timely requested reasonable accommodations for her religious beliefs, and Novant failed to provide a reasonable accommodation. The requested accommodation would not have posed an undue hardship. Instead, Defendant suspended and then terminated Plaintiff's employment and treated her disparately from her co-workers due to her religion, which constituted religious discrimination in violation of Title VII and the public policy of North Carolina. Plaintiff

seeks all legal and equitable relief available, including reinstatement, back pay, front pay, out of pocket costs, compensatory damages, punitive damages, and attorneys' fees and costs.

## PARTIES

3. Plaintiff Kristine Matthies is a citizen and resident of Monroe, Union County, North Carolina.

4. Upon information and belief, Defendant is North Carolina limited liability company with its principal place of business in Matthews, Mecklenburg County, North Carolina.

5. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of Title VII and applicable state law.

6. Upon information and belief, Defendant employs more than five hundred (500) employees.

7. At all relevant times, Defendant was Plaintiff's "employer" within the meaning of Title VII and applicable state law.

## JURISDICTION AND VENUE

8. Pursuant to N.C. General Statutes 1-75.4 and 1-79, jurisdiction and venue are proper in this Court.

## ADMINISTRATIVE EXHAUSTION

9. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about January 23, 2022.

10. The EEOC found cause that Defendant violated Title VII by failing to provide Plaintiff with a reasonable accommodation, a copy of which is attached as **Exhibit 1**.

11. After conciliation failed, the EEOC issued Plaintiff a Notice of Right to Sue on November 7, 2024, entitling her to commence this action within 90 days of receipt of that notice.

12. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

**FACTUAL BACKGROUND**

13. Plaintiff began employment with Defendant in or around October 2016, as a Registered Nurse ("RN") and held that position at the time of her termination on November 8, 2021.

14. Plaintiff worked as an RN in the operating room and the emergency room, providing patient care.

15. Plaintiff frequently served as the charge nurse in the operating room, which included the additional responsibilities of answering the department telephone, coordinating emergency surgeries, and overseeing staff.

16. At all relevant times, Plaintiff was qualified for her position and performed her duties in a satisfactory manner.

*Defendant's Influenza Vaccination Policy*

17. Defendant's Team Member (Healthcare Worker) Influenza Immunization policy proscribes that "Novant Health requires an annual influenza vaccination for all Novant Health team members as a *condition of employment* unless a valid medical or religious exemption is granted."

18. In the fall of 2021, Defendant notified employees that the flu vaccination period would begin on October 1st and team members would have until 5 p.m. on October 31, 2021, to receive the vaccine and submit proof of vaccination. The notification further said that exemption requests were due by September 30th at 5 p.m.

*Plaintiff's Reasonable Religious Accommodation Requests*

19. On or about September 15, 2021, Plaintiff timely submitted a Religious Accommodation Request for the Seasonal Influenza Vaccine ("Influenza Religious Accommodation Request"), in which she stated that her religion was Christian and requested a:

> [P]ermanent faith-based exemption from Novant Health's Influenza vaccine mandate. God's work, the Bible, is the ultimate authority over how I live my life and where my deeply held religious beliefs and convictions come from.
>
> 1 Corinthians 6:19-20 (NIV) states "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore, honor God with your bodies."
>
> I believe that my body is a temple of the Holy Spirit of God. I am required, based on my Christian faith, to protect the physical integrity of my body to the best of my ability. I take care of my body by eating healthy, exercising regularly and I avoid introducing any unnatural substances into my body. I seek medical care from a physician only after natural, God given resources are exhausted. It is my spiritual belief that injecting an artificially made vaccine into my body, without a medical need, would be a sin against my God who created me. I do not want to jeopardize my relationship with God.
>
> I am asking for an exemption from the Influenza shot directive so my conscience can remain clear before God and allow me to maintain my relationship with God.
>
> ….

20. From October 5, 2021 through November 7, 2021, Plaintiff was on approved Family Medical Leave Act ("FMLA") leave to care for her ailing father in New York, who ultimately died on October 17, 2021.

21. While still on approved FMLA leave, Plaintiff's manager contacted Plaintiff on October 25, 2021, asking whether she received her influenza vaccine. Plaintiff then called Human Resources ("HR") and Employee Health and learned that her Influenza Religious Accommodation Request was denied, and the deadline to appeal had passed. Although Plaintiff was on FMLA

leave in New York and did not have access to her work email, Defendant only notified Plaintiff of the denial of her Influenza Religious Accommodation Request via an email to her work email. Plaintiff asked HR to forward the denial letter to her personal email address, so she could access the letter. Plaintiff also asked if she could still appeal the decision, despite the five-day appeal deadline, because she was on FMLA.

22. Plaintiff received the email with the denial letter, dated October 13, 2021, on October 25, 2021. The denial letter stated that Plaintiff was expected to complete the vaccination process by October 31, 2021, at 5:00 p.m.

23. Plaintiff submitted an appeal of the denial of her Influenza Religious Accommodation Request on October 26, 2021, and said:

> … Under Title VII of the Civil Rights Act, my religious beliefs, which were stated in my initial request, are protected. In fact, I submitted a very similar statement regarding my religious beliefs and vaccines when I submitted an exemption request for the Covid shot and that exemption was approved. How then, can this exemption be denied? I hold firmly, that my body is a temple of God and I do not wish to inject anything into my body that could potentially cause harm. All vaccines and medications have the potential to cause harm with side effects. I believe that my God given natural immunity can defend me against the flu. I do not seek medical care of prescription medications before trying natural remedies that are of God's Earth first. It does not make sense to me how I could get denied for the flu shot exemption when my exemption for the Covid shot was approved based on the same religious beliefs and convictions. Please take this into consideration when reviewing this again. Thank you.

24. Later that same day, on or about October 26, 2021, Defendant again denied Plaintiff's Influenza Religious Accommodation Request. Without specifying the reason for the denial, the response generally stated, "[i]f you received a denial, the committee did not feel the information you provided, in your own words, explained why your sincerely held faith-based belief prevented you from getting the influenza vaccine." Defendant further stated it was "a final review"

5

and as a condition of continued employment, Plaintiff was required to receive the influenza vaccine by October 31, 2021.

25. On or about October 27, 2021, Plaintiff sent another email requesting information on why her Influenza Religious Accommodation Request was denied.

26. Again, Defendant's response was sent to Plaintiff's work email, which she was unable to access until November 4, 2021. Defendant's response did not specify why Plaintiff's request was denied. Rather it said,

> Due to the volume of requests, we are unable to respond to each team member individually with an explanation regarding their denial. The response you received in your denial email is a universal response that was sent to all team members who did not have an approved faith based exemption for the influenza vaccine that attempted to dispel some of the misgivings around the flu vaccine.
>
> …
>
> [T]he Novant Health faith based review committee has implemented the following guidelines to assist in faith based exemption request determinations:
>
> o Requests that were not in the team member's own words were not accepted.
> o Requests that centered around the use of fetal cell lines being involved in development or testing of the influenza vaccine were not accepted. The influenza vaccines being offered at Novant Health were not produced or tested using fetal cell lines.
> o Requests that centered around the influenza vaccine containing pork products were not accepted. The influenza vaccines being offered at Novant Health do not contain pork products.
> o Requests that were not specific to the influenza vaccine were not accepted.
> o Requests objecting to the vaccines based on non-specific ingredients were not accepted.
> o Requests that specific only medical reasons for not takin the vaccines were not accepted by the faith based committee. In most cases, the faith based committee recommended that the team member request a medical exemption.

- Requests that did not make a connection between the team member's faith and how the influenza vaccine is an affront to their faith, were not accepted.

27. None of the listed guidelines applied to Plaintiff's Influenza Religious Accommodation Request.

28. Defendant did not engage in an interactive process with Plaintiff in evaluating Plaintiff's Influenza Religious Accommodation Request and did not explain why her request was denied.

29. As noted above, Defendant's stated policy was to consider and provide exemption accommodations for "valid medical or religious" contraindications and beliefs so the employee would not be required to receive the Influenza vaccine.

30. Other employees of Defendant besides Plaintiff requested that they be permitted to continue working for Defendant without receiving the Influenza vaccine.

31. Certain employees of Defendant who requested that they be permitted to continue working for Defendant without receiving the Influenza vaccine did so for secular reasons and/or reasons other than the sincerely held religious belief that led Plaintiff to seek a religious exemption from Defendant.

32. Defendant granted certain employees' Influenza exemption requests and/or permitted them to continue working for Defendant without receiving the Influenza vaccine while denying Plaintiff's Influenza Religious Accommodation Request.

33. Defendant permitted certain patient-facing employees to continue working for Defendant without receiving the Influenza vaccine.

34. Plaintiff was a patient-facing employee and was similarly situated to employees that Defendant permitted to continue working for Defendant without receiving the Influenza vaccine.

35. Yet, despite Plaintiff being similarly situated to other employees, who were permitted to continue working for Defendant without receiving the Influenza vaccine and who had secular reasons for not being required to take the Influenza vaccine, Defendant terminated Plaintiff when she presented her sincerely held religious belief as her reason for not being required to take the Influenza vaccine.

36. Upon information and belief, other employees of Defendant who sought Influenza exemptions for "religious reasons" were also denied the requested exemption by Defendant.

37. In August 2021, Plaintiff's Covid-19 Faith-Based Exemption was approved. As part of the approval, Plaintiff was required to be "fit tested and wear an N95 respirator when inside a Novant Health location."

38. Since Plaintiff was already required to wear an N95 respirator when inside a Novant Health location, Plaintiff's Influenza Religious Accommodation Request was reasonable and would not have posed an undue hardship for Defendant.

*Plaintiff's Termination*

39. Despite Plaintiff's repeated efforts to engage in a personalized interactive process with Defendant to obtain a specific explanation of why her Influenza Religious Accommodation Request was denied, Plaintiff was terminated on November 8, 2021.

40. Following her termination by Defendant, Plaintiff has suffered financial damages and severe mental and emotional distress including anxiety, depression, mental anguish, sleeplessness, and pain and suffering.

8
Case 3:25-cv-00020-FDW-SCR     Document 1     Filed 01/10/25     Page 8 of 15

# FIRST CLAIM FOR RELIEF
**(Religious Discrimination (Failure to Accommodate) in Violation of Title VII, as amended)**

41. The allegations of the previous paragraphs are realleged and incorporated herein by reference.

42. Defendant was an employer of Plaintiff.

43. Plaintiff is a member of a protected class.

44. Plaintiff holds sincere religious beliefs that conflict with Defendant's Influenza vaccination policy.

45. Plaintiff informed Defendant of her sincerely held religious beliefs and how her beliefs conflicted with the Influenza vaccination policy.

46. Plaintiff requested reasonable accommodations to Defendant's Influenza vaccination policy that conflicted with her sincerely held religious beliefs.

47. Despite the reasonableness of Plaintiff's Influenza Religious Accommodation Request and appeal, Defendant denied Plaintiff's accommodation requests.

48. Defendant failed and refused to engage in an interactive process with Plaintiff.

49. Had Defendant engaged in an interactive process with Plaintiff, reasonable accommodations would have been determined.

50. Title VII states, "[i]t shall be an unlawful employment practice for an employer…to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's…religion…." 42 U.S.C. § 2000e-2(a)(1).

51. Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably

accommodate an employee's...religious observance or practice without undue hardship on the conduct of the employer's business."

52. Plaintiff's reasonable accommodation requests did not pose an undue hardship on the conduct of Defendant's particular business. The Supreme Court of the United States recently held that "'undue hardship'" is shown when "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [the employer's] particular business." *Groff v. DeJoy*, 600 U.S. \_\_\_, 18 (2023). The evaluation is a fact-specific inquiry. *Id.* at 16. The Court continued by stating,

> [U]nder any definition, a hardship is more severe than a mere burden. So even if Title VII said only that an employer need not be made to suffer a 'hardship,' an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier 'undue' means that the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level.
>
> …
>
> When 'undue hardship' is understood in this way, it means something very different from a burden that is merely more than *de minimis, i.e.*, something that is 'very small or trifling.'

*Id.* at 16-17. "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of an employer.'" *Id.* at 18.

53. Defendant's denial of Plaintiff's reasonable accommodation requests violated Plaintiff's rights under Title VII.

54. Defendant's conduct, as described above, constitutes unlawful religious discrimination in violation of Title VII.

55. As a direct and proximate result of Defendant's unlawful discrimination, as set forth above, Defendant is liable to Plaintiff for actual, general, compensatory, consequential, special, emotional distress, punitive, and other damages, including without limitation, her reasonable attorneys' fees and costs of this action and pre-judgment interest.

56. Defendant's actions, as described above, were willful, malicious, intentional, outrageous and aggravated, and showed a reckless and wanton disregard of Plaintiff's rights and interests, warranting the imposition of substantial punitive damages.

## SECOND CLAIM FOR RELIEF
**(Religious Discrimination (Disparate Treatment) in Violation of Title VII, as amended)**

57. The allegations of the previous paragraphs are realleged and incorporated herein by reference.

58. Defendant was an employer of Plaintiff.

59. Plaintiff is a member of a protected class.

60. Plaintiff holds sincere religious beliefs that conflict with Defendant's Influenza vaccination policy.

61. Plaintiff informed Defendant of her sincerely held religious beliefs and how her beliefs conflicted with the Influenza vaccination policy.

62. Plaintiff requested a valid exemption from Defendant's Influenza vaccination policy that conflicted with her sincerely held religious beliefs.

63. Defendant denied Plaintiff's Influenza Religious Accommodation Requests.

64. Defendant exempted and retained similarly situated employees outside of Plaintiff's protected class from the Influenza vaccination requirement, including employees who sought exemptions for secular reasons.

65. Title VII states, "[i]t shall be an unlawful employment practice for an employer…to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's…religion…." 42 U.S.C. § 2000e-2(a)(1).

66. Title VII further defines "religion" to include "all aspects of religious observance and practice, as well as belief…."

67. Defendant's denial of Plaintiff's exemption from the Influenza vaccination, while exempting and retaining employees outside of Plaintiff's protected class, violated Plaintiff's rights under Title VII.

68. Plaintiff's religion was a motivating factor for Defendant's actions.

69. Defendant's conduct, as described above, constitutes unlawful religious discrimination in violation of Title VII.

70. As a direct and proximate result of Defendant's unlawful discrimination, as set forth above, Defendant is liable to Plaintiff for actual, general, compensatory, consequential, special, emotional distress, punitive, and other damages, including without limitation, her reasonable attorneys' fees and costs of this action and pre-judgment interest.

71. Defendant's actions, as described above, were willful, malicious, intentional, outrageous and aggravated, and showed a reckless and wanton disregard of Plaintiff's rights and interests, warranting the imposition of substantial punitive damages.

### THIRD CLAIM FOR RELIEF
**(Wrongful Termination in Violation of North Carolina Public Policy)**

72. The allegations of the previous paragraphs are realleged and incorporated herein by reference.

73. Defendant was an employer of Plaintiff.

74. Plaintiff is a member of a protected class based on her religion.

75. Plaintiff holds sincere religious beliefs that conflict with Defendant's Influenza vaccination policy.

76. Plaintiff informed Defendant of her sincerely held religious beliefs and how her beliefs conflicted with the Influenza vaccination policy.

77. Plaintiff requested exemption from Defendant's Influenza vaccination policy that conflicted with her sincerely held religious beliefs.

78. Defendant denied Plaintiff's Influenza Religious Accommodation Requests.

79. Defendant exempted and retained similarly situated employees outside of Plaintiff's protected class from the Influenza vaccination requirement, including employees who sought exemptions for secular reasons.

80. The North Carolina Equal Employment Practices Act, N.C. Gen. Stat. §143-422.2 ("NCEEPA") states "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of…religion…by employers which regularly employ 15 or more employees."

81. Defendant's denial of Plaintiff's exemption from the Influenza vaccination, while exempting and retaining employees outside of Plaintiff's protected class, violated Plaintiff's rights under North Carolina public policy set forth in the NCEEPA.

82. Defendant wrongfully terminated Plaintiff's employment in violation of the public policy set forth in the NCEEPA.

83. Defendant terminated Plaintiff's employment for discriminatory and unlawful reasons.

84. Plaintiff's religion was a motivating factor for Defendant's actions.

85. Defendant's conduct, as described above, was without justification or excuse, was reprehensible, and occurred after Plaintiff notified Defendant of her religion and requested an exemption from the Influenza vaccination requirement due to her sincerely held religious beliefs.

86. Due to Defendant's actions and inactions, through its employees, Plaintiff suffered severe emotional distress.

87. As a direct and proximate result of Defendant's wrongful termination of Plaintiff, as set forth above, Defendant is liable to Plaintiff for actual, direct, general, compensatory, consequential, special, emotional distress, punitive, and other damages, including without limitation, her reasonable costs of this action and pre-judgement interest, in an amount in excess of twenty-five thousand dollars ($25,000.00) to be determined by a jury.

88. Defendant's actions, as described above, were willful, malicious, intentional, outrageous and aggravated, and showed a reckless and wanton disregard of Plaintiff's rights and interests, warranting the imposition of substantial punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and grant her the following relief:

1. Actual, general, compensatory, consequential, statutory, special, emotional distress, and punitive damages, in an amount in excess of twenty-five thousand dollars ($25,000.00) to be determined by a jury, against Defendant;

2. All damages allowable by law, common law, statute, rule, or regulation against Defendant;

3. Pre-judgment and post-judgment interest against Defendant;

4. Reasonable attorneys' fees and costs of the action against Defendant;

5. Nominal damages, if other monetary damages are not awarded;

6. Injunctive relief to prohibit unlawful conduct in the future;

7. That this matter be tried by a jury; and

8. Such other, further, or different relief as the Court deems just, proper, or equitable.

Respectfully submitted, this 10th day of January, 2025.

/s *Tamara L. Huckert*
Tamara L. Huckert, NC State Bar No. 35348
Christopher Strianese, NC State Bar No. 46918
Strianese Huckert LLP
3501 Monroe Rd.
Charlotte, NC 28205
Telephone: 704-966-2101
tamara@strilaw.com
chris@strilaw.com

and

Amanda Mingo, NC State Bar No. 24423
Katie Clary, NC State Bar No. 39248
Rawls, Scheer, Clary, & Mingo, PLLC
2333 Randolph Rd., Ste. 100
Charlotte, NC 28207
Telephone: 704-376-3200
amingo@rscmlaw.com
kclary@rscmlaw.com

*Attorneys for Plaintiff*